McGOWAN v. LOWRY.　(No. 9418.)

(Court of Civil Appeals of Texas. Fort Worth. March 19, 1921. Rehearing Denied April 23, 1921.)

1. Judgment ⟨⟩17(1) — Judgment against plaintiff on cross-bill on day cross-bill filed is invalid without notice.

In trespass to try title, judgment granting affirmative relief on defendant's answer and cross-action filed on the day of the trial without notice to plaintiff, where defendant by cross-bill set up title himself, and plaintiff did not appear on the day of the trial, was invalid.

2. Judgment ⟨⟩220—Recitation in judgment held not to show waiver of notice of cross-bill.

In trespass to try title, where affirmative judgment for defendant on his cross-bill for title and possession of the land in controversy was rendered on the day of trial when the cross-bill was first filed and in plaintiff's absence, recitation in the judgment as to agreement of plaintiff's counsel, together with affidavit of defendant's attorney, held not to show waiver by agreement of counsel of notice of defendant's cross-action.

3. New trial ⟨⟩108(2)—Affidavits held to show different result would be reached on new trial.

In trespass to try title, where affirmative judgment for defendant on his cross-bill for title and possession of the land was rendered on the day of trial in plaintiff's absence, affidavits accompanying plaintiff's motion for new trial held to show that a different result would be obtained by a new trial.

Buck, J., dissenting.

Appeal from District Court, Comanche County; J. H. Arnold, Judge.

Trespass to try title by Claud L. McGowan against J. H. Lowry and another. From judgment that plaintiff recover nothing as against the defendants and that the named defendant have affirmative judgment against plaintiff for the land described, plaintiff appeals. Reversed and remanded.

R. E. Rouer, of Fort Worth, and Percy Powers, of Mangum, Okl., for appellant.

Hampton, Harris, & Hampton, of De Leon, and Goodson & Nabors, of Comanche, for appellee.

BUCK, J. Suit was filed by plaintiff, appellant here, on May 14, 1919, in form of trespass to try title to 83 acres of land situated in Comanche county, against defendants, J. H. Lowry and Chalmers F. Greenwood. The defendant Lowry answered by general demurrer and general denial and the plea of not guilty, and specially pleaded that he held title by reason of a deed executed to him on November 16, 1902, by W. A. Warren and wife, which deed was duly recorded in the deed records of Comanche county. He specially pleaded the three, five, and ten year statutes of limitation. From a judgment in favor of defendant Lowry that plaintiff recover nothing as against Lowry or Greenwood, and that Lowry have judgment against plaintiff for the title and possession of the land described in plaintiff's petition, and for costs, plaintiff has appealed.

Plaintiff alleged in his motion for new trial, duly verified, that his father and mother formerly owned the land in controversy, and that the same was occupied as a homestead by them; that his mother died in August, 1893, at which time plaintiff was about four weeks old; that in purchasing

the land his father gave to his grantor, H. R. Martin, vendor's lien notes, aggregating $284.50, but that these notes were paid prior to the death of plaintiff's mother; that the community estate owed no debts, but that his father, on December 29, 1894, executed a warranty deed to his grantee, H. R. Martin, the recited consideration in said deed being the cancellation of three certain promissory notes aggregating $284.50; that thereafter H. R. Martin, on January 2, 1895, executed a warranty deed to R. G. Hendrix, and that paper title was subsequently passed until it became vested in Lowry. Plaintiff alleged that in truth and in fact no consideration passed from Martin to J. H. McGowan, his father, and that the conveyance to Martin was a fraudulent transaction made for the purpose of defrauding plaintiff of his interest in the land, and that all the parties engaged in this transaction knew that said land was community property, and that plaintiff held an interest therein; that said deed was given to Martin for the purpose of making the title appear regular, and making the deed as if executed by the elder McGowan in payment of community debts.

Plaintiff further alleged in his motion for new trial that he had talked with witnesses residing outside of Comanche county who would testify to the truth of the allegations made in his petition. He further alleged that he had employed B. Y. Cummings as an attorney to represent him, and that said attorney filed his petition, and that prior to the trial, at which plaintiff was not present, said Cummings wrote him that he desired to withdraw from the case; that plaintiff thereupon wrote Cummings requesting him to see that no action was taken or that the case was not dismissed until he could come to Texas and look after his interests, he at that time living at Mangum, Okl.; in reply to said letter written by plaintiff, Cummings answered assuring him that no action would be taken until he could secure other counsel; that he wrote to the district clerk of Comanche county and received a reply that service was not complete, and plaintiff had asked leave of the court to file amended pleadings; that court was in session and would be until January 1, 1921; that plaintiff thereupon secured another attorney, E. M. Stewart, of Mangum, who was busily engaged in the trial of cases in the state of Oklahoma and at Wichita Falls, and could not immediately leave for Comanche, Tex., where this cause was pending; that on the 27th day of November, 1919, the earliest time possible, plaintiff reached Comanche and discovered that a judgment had been rendered in his suit on November 14th. Attached to said motion is an affidavit from E. M. Stewart substantiating the allegations made in said motion, and that he knew of his own knowledge that plaintiff had used every diligence at his command to get ready for trial, and had reached Comanche at his earliest opportunity. Also there was a verified statement from B. Y. Cummings to the effect that he had been the attorney of plaintiff and had reached the conclusion that plaintiff would not be able to prove that defendant Lowry was not an innocent purchaser; that on or about October 7, 1919, he received a letter from P. A. Gates inclosing a letter written to the latter by plaintiff, which affiant construed as a withdrawal of the case from his hands; that thereupon he wrote to Gates that he had been unable to get any witnesses to establish plaintiff's case, and did not feel like going to Oklahoma and incurring a useless expenditure of money in an effort to hunt up such witnesses. He further stated that if plaintiff could compromise the case to go ahead and do so, and that he would charge nothing for his services theretofore rendered; that at the fall term of the district court in 1919 he had a conversation with the attorney representing defendant Lowry and told him that he did not intend to continue in the case and had so advised the plaintiff, and requested that the case be allowed to remain on the docket until plaintiff could procure another attorney, if he so desired.

Defendant's first amended answer was filed the day the judgment was entered, and for the first time he asked for affirmative relief against plaintiff. Moreover, it appears from the clerk's certificate in the record that neither defendant was served with citation, and that no return was ever made of the two citations issued on or about May 14, 1919. In the decree the defendant Greenwood was ordered and adjudged "to go hence without day and recover his costs," although he does not appear to have been served.

[1] Error is assigned to the action of the court in granting affirmative relief on defendant's answer and cross-action, filed on the day of the trial, without notice to plaintiff, where the defendant by cross-bill sets up title in himself. In Harris v. Schlinke, 95 Tex. 88, 65 S. W. 172, our Supreme Court says:

"Where the defendant by cross-bill sets up title in himself, the court cannot enter judgment on the cross-bill without service of it upon plaintiff."

In Kruegel v. Bolanz, 100 Tex. 572, 102 S. W. 110, our Supreme Court says:

"The cross-bill, as an independent action, was as fully under the control of the defendant as was the original suit subject to the will of the plaintiffs, and it follows logically that the same means should have been used to call upon the defendants to the cross-bill to answer its charges as were required by law to compel

the defendant in the original suit to appear and plead to that complaint."

See, also, Field v. O'Conner, 80 S. W. 872; Bryson v. Boyce, 41 Tex. Civ. App. 415, 92 S. W. 820. In the last case, writ of error denied, the Court of Civil Appeals, quoting from the syllabus, said:

"Where the record of a judgment upon a cross-bill showed that it was rendered on the same day that the cross-bill was filed, so that service could not have been had, and that the persons against whom the judgment was rendered did not appear, it was subject to collateral attack."

[2] Appellee urges in answer to this assignment that the recitations in the judgment sustain the contention that plaintiff's attorney, B. Y. Cummings, had knowledge of defendant Lowry's intention to file his cross-action and agreed to his doing so. The judgment recitation is as follows:

"It having heretofore by agreement of counsel for the plaintiff, Claud L. McGowan, and of counsel for the defendant J. H. Lowry, having heretofore been given leave to file his first amended original answer herein, filed such pleadings, and on the call of said case the attorneys of the plaintiff announced that they would not prosecute the same further and had advised their client, the plaintiff herein, to that effect some three weeks prior to this time, and that as far as they were concerned the court could proceed with said cause."

In defendant's counter affidavits, supporting his reply to plaintiff's motion for new trial, appears a statement from H. N. Goodson, one of defendant's attorneys, that on October 21st, or possibly a few days thereafter, he talked to B. Y. Cummings about a setting of the case, and told him that Lowry was going to ask leave to amend and file an amended pleading setting up the three, five, and ten year statutes of limitation, and in which he would ask for affirmative relief as against the cloud on his title cast by the plaintiff's suit and the proceedings thereunder, and that Cummings replied that this would be all right; that during the week beginning November 10th said Cummings was again in Comanche, and that affiant told him that he wanted the McGowan v. Lowry case finally disposed of during that week, and that Cummings replied that "as soon as we could get to it on docket" it could be disposed of; that he had become convinced that he had no case whatever, and had so advised his client some three weeks before that time and had heard nothing from him.

The writer thinks that the recitation in the judgment and affidavit of defendant's attorney aforementioned sustains the presumption that the trial court concluded that under the agreement of counsel that notice of defendant's cross-action had been waived, and, in the absence of a denial by plaintiff or his attorney of this waiver, that the assignment should be overruled. The majority, however, are of the opinion that the assignment should be sustained and a new trial granted. In their judgment, plaintiff has been denied his day in court, without any fault on his part, and a sufficient equitable showing has been made to entitle plaintiff to a new trial.

Under the second assignment, complaint is made of the judgment, in that judgment was rendered for Greenwood, though he was not cited and made no appearance in court. If Greenwood was not served with citation and made no appearance, he should have been dismissed from the suit, or the case continued for service. Article 1896, V. S. Tex. Civ. Stats. In Sanders v. Wettermark, 20 Tex. Civ. App. 175, 49 S. W. 900, it is said:

"Where one of the several defendants is not served with process, and does not appear, the court should dismiss as to him, without prejudice, and not direct a verdict in his favor."

The appellee replies to this assignment that, since no affirmative relief was granted defendant Greenwood, the judgment of the court with reference to him is tantamount to dismissal, and that, as the judgment recites that the attorneys for plaintiff and defendant were present at the trial, and that no objection was made to the judgment in this respect, such action does not present reversible error. Since the majority have concluded that a new trial should have been granted below, the alleged error here presented becomes immaterial in the disposition of this appeal.

[3] In the third assignment appellant urges that plaintiff was prevented from presenting his case by accident and acts of other parties, wholly unmixed with any fault or negligence on his part. Appellee replies that in determining that the plaintiff had no cause of action the trial court did not abuse his discretion in refusing the motion for new trial, and that a different result will not be obtained by a new trial. He includes in his reply to plaintiff's motion for new trial an affidavit from J. H. Whisenant, who states that on December 20, 1894, he was justice of the peace of precinct No. 1, Comanche county, and that on said date J. H. McGowan and H. R. Martin came to his office, and that McGowan executed a general warranty deed to Martin wherein he conveyed to the latter the land in question, and that at said time both McGowan and Martin advised affiant that McGowan owed Martin a part of the purchase money on the land, and that Martin held vendor's lien notes therefor, and that McGowan was unable to pay them, and that the transfer of the land by McGowan to Martin was made for the consideration that Martin would cancel said notes.

Appellee further urges that in his affidavit in support of his motion plaintiff failed to state the name or the residence of any witness that he claimed he had talked to concerning his proof of payment of the vendor's lien notes, and that the trial court, all things considered, was justified in concluding that plaintiff had no meritorious cause of action.

It is further to be noted that in the deed from McGowan to Martin it was recited that the conveyance was made in consideration of the cancellation of the vendor's lien notes held by Martin. It is further urged that defendant Lowry's affidavit states that he purchased the land from W. A. Warren and wife in 1902, some 17 years before the filing of this suit, and has lived thereon and occupied the same as a homestead since said time; that he had never heard of any adverse claim either by the plaintiff in this suit or any one else until the filing of the suit.

In Burnham v. Hardy Oil Co., 108 Tex. 555, 564, 195 S. W. 1139, 1143, in speaking of the authority of the husband to convey the community property after the death of the wife, it is said:

"After her death, the husband may legally convey her interest only for the purpose of paying community debts. He is wholly without power, after her death, to convey it for any other purpose. This is so because of his want of ownership of her interest and the refusal of the law to recognize any authority in one person to dispose of another's property unless duly empowered. Where the grant or deed to community lands is in the name of the husband, the legal title to the lands is in him. The title he has is the legal title because it is the evidence of ownership required by law. With the evidence of title afforded by the grant or deed—the mode of acquiring title as provided by law—thus proving ownership in him, one purchasing in good faith from him, after the wife's death, without notice of the community character of the property or of some fact sufficient to require inquiry, will acquire title to the wife's interest against her heirs, the real owners of it. But this is not so because of any power in the husband to convey the interest. Having no authority whatever to convey it after her death except in the payment of community debts, he has no more real power to convey it to an innocent purchaser than to any one else. The innocent purchaser, under the conditions named, acquires the title to the interest through the force alone of the doctrine of equity which refuses to visit loss upon one in his situation, but imposes it rather upon those who, having the real interest, have been negligent in permitting another to hold the legal evidence of perfect right in himself."

See, also, Hill v. Moore, 62 Tex. 610; Edwards v. Brown, 68 Tex. 329, 4 S. W. 380, 5 S. W. 87.

In trespass to try title suits the defendant may prove under a plea of not guilty that he is an innocent purchaser. Articles 7739, 7740, V. S. Tex. Civ. Stats.; North v. Coughran, 49 Tex. Civ. App. 101, 108 S. W. 165, writ of error refused; Keenon v. Burkhardt, 162 S. W. 483; McKamey v. Thorp, 61 Tex. 648.

Upon the strength of these authorities, and others that might be cited, the writer is of the opinion that the judgment should be affirmed, but the majority have concluded otherwise. Hence the judgment will be reversed, and the cause remanded.

BUCK, J., dissenting.