Jane BROCK, Appellant,

v.

Grace UNDERWOOD et vir, Appellees.

No. 7892.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 18, 1968.

Rehearing Denied Dec. 23, 1968.

558

Key, Carr, Carr & Clark and Donald M. Hunt, Lubbock, for appellant.

Crenshaw, Dupree & Milam and Cecil C. Kuhne, Huff & Bowers and Broadus A. Spivey, Lubbock, for appellees.

CHAPMAN, Justice.

This is an appeal by Jane Brock from a judgment based upon a jury verdict for Grace Underwood and husband, D. B. Underwood, in a common law negligence action growing out of a collision between the automobiles of Mrs. Brock and the Underwoods at an uncontrolled intersection.

The jury found appellant failed to yield the right-of-way, failed to keep a proper lookout, that each failure was negligence and a proximate cause of the collision, that she failed to make a proper application of her brakes and that failure was a proximate cause of the collision. The jury found Martha Smith, the driver of appellee's vehicle, did not fail to yield the right-of-way, did not fail to make proper application of her brakes and was not driving at an excessive rate of speed immediately before the collision.

Appellant's first two points raise questions of no evidence and factually insufficient evidence to support the issues of failure of appellant to yield the right-of-way and the same questions of the jury findings that appellee's vehicle did not fail to so yield. Her third point, argued with the first two, is asserted error of the court in failing to define "approximately the same time" as "substantially in advance".

Appellant's vehicle was approaching the intersection on Albany Street while travelling south. That street is 36 feet in width. The Underwood vehicle was approaching west on 26th Street on the proper side of the street. That vehicle had travelled 26 feet into the intersection and the Brock vehicle 8 feet before the impact, which occurred in the northwest quadrant of the intersection.

There is probative evidence that both appellant and Martha Smith were driving approximately 30 mph. as they approached the intersection; that Mrs. Smith applied her brakes sufficiently to lay down 12 feet of skid marks before the Brock vehicle struck appellee's vehicle on its right front fender. There is not any evidence of application of the brakes on the Brock vehicle. The weather was clear and the streets dry.

By brief appellant admits the Underwood vehicle was already 18 feet into the intersection before she started into it with her vehicle but contends in substance that the two vehicles, as a matter of law, arrived at the intersection at approximately the same time within the purview of Art. 6701d, Sec.

71(a)[1] and (b)[2], Vernon's Ann.Tex.Civ.St. Even a cursory glance at Sec. 71(a) and 71(b) suggests the troublesome question is the legal meaning of "approximately the same time". Legal articles have so recognized, as has Chief Justice Calvert of the Supreme Court of Texas.[3]

The trial court here instructed the jury in the substantial language of "(a)" and "(b)" with respect to an uncontrolled intersection. No objections are shown to have been made to such instructions. The real thrust of appellant's objections was the failure of the trial court to give the issues and instructions recommended in the Texas Law Review article cited in footnote 3.

This court has held it is not reversible error for a trial court to give the instructions substantially as given here. Dallas Railway & Terminal Co. v. Orr, 210 S.W. 2d 863 (Tex.Civ.App.-Amarillo, 1948, affirmed 147 Tex. 383, 215 S.W.2d 862 without a discussion of this particular point). The Austin Intermediate Appellate Court has held that even if error, the giving of such charge was harmless. Coca-Cola Bottling Co. v. Krueger, 239 S.W.2d 669 (Tex. Civ.App.-Austin, 1951, writ ref'd, n. r. e.).

■ Appellant urges venturesomeness upon this court by insisting that we reverse and remand for failure of the trial court to give the issues and instructions suggested in the Texas Law Review article cited in footnote 3 and approved by Chief Justice Calvert of the Supreme Court of Texas at the beginning of such article. It is well to note that Chief Justice Calvert said the subject article would be helpful to "lawyers and trial judges" in formulating special issues and that "I commend the suggested issues and instructions". Such statement is a far cry from suggesting that an interme-

diate appellate court send a case back for trial for failure to give such issues and definitions when the instructions given have been approved, thus denying appellees their recovery under established procedures. Had the trial court submitted the case as suggested in the subject article we would approve it in deference to Chief Justice Calvert's recommendation to lawyers and trial judges, but as the record stands we prefer to "be not the first by whom the new are tried, nor yet the last to lay the old aside." The experiment would be unfair to plaintiff who has recovered judgment under established rules. If such change from established procedures is to be made (and the cited Texas Law Review article definitely points up the need for change) the place for its genesis is in the trial court, as Chief Justice Calvert suggests. In other words, the question here is not whether the issues and instructions suggested in the cited Texas Law Review article are correct but whether the method in which the case was submitted was reversible error. The authorities above cited answer the question in the negative.

■ The right-of-way answers are not against the overwhelming weight and preponderance of the evidence. In determining that question we must look to all the probative evidence. King v. King, 150 Tex. 662, 244 S.W.2d 660 (1951). Appellant did not remember any of the facts causing the collision. Mrs. Smith's testimony shows she entered the intersection first. All physical facts show likewise. The investigating officer, Robertson, first testified affirmatively to a leading question stating:

> "Q. Officer, based on the physical evidence of these cars colliding out there in the intersection, if they were both travelling at approxi-

1. "(a)" provides: "The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway."

2. "(b)" provides: "When two (2) vehicles enter an intersection from different high-

ways at approximately the same time the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

3. Submission of Issues in Uncontrolled Intersection Collision Cases in Texas, Vol. 44, Texas Law Review, P. 1–21.

mately the same speed they would have had to arrive at this intersection at approximately the same time to have this collision occur, would they not?"

He later changed that testimony, after recognizing he had been confused, and stated " * * * if they had got there approximately the same time it (the collision) would have been more * * * in the center of the street * * *." (Parenthetical statement ours) The physical evidence shows the Underwood car had already travelled 18 feet into the intersection before appellant's car started into the intersection, despite the application of brakes on the Underwood car.

■ "Approximate", the adjective form of the adverb "approximately", is defined as "nearly resembling, near to correctness, nearly exact". Webster's New Collegiate Dictionary, a Merriam-Webster, 1949. Under these dictionary definitions the vehicles did not enter the intersection at approximately the same time because the Underwood vehicle had already penetrated 18 feet into the intersection before the other vehicle started into it. Numerous intermediate appellate courts have held that the automobile entering the intersection first has the right-of-way. Three examples are the following: Waco Transit Corp. v. Resvanis, 364 S.W.2d 302 (Tex.Civ.App.-Waco, 1963, n. w. h.) ; Altum v. Booth, 399 S.W.2d 836 (Tex.Civ.App.-Austin, 1966, n. w. h.) ; Buchanan v. Lang, 247 S.W.2d 445 (Tex.Civ.App.-Waco, 1952, writ ref'd n. r. e.). Mr. Justice Wilson speaking for the court in Waco Transit Corp. v. Resvanis, supra said: "Appellant, 'in order to claim the right-of-way, was required to show * * * that he was first in the intersection, since the other vehicle was in fact to his right.' " The points are overruled.

The next group of points raise no evidence and factually insufficient evidence questions on application of brakes and speed of the Underwood automobile.

■ Mrs. Smith testified she was driving approximately 30 mph. in approaching the intersection and in effect that she applied her brakes as rapidly as her reaction would permit after she saw the other vehicle. There is not any testimony to the contrary. She could not remember exactly how far she was from the intersection before she saw the Brock car. She also testified that even if she had decreased the speed of her car to less than the legal limit of 30 mph. they would still have had the collision; that the Brock car either would have struck her further toward the front or she would have struck it before it cleared the intersection. We do not find any complaint in the record of the jury findings on lookout against Mrs. Brock and for Mrs. Smith. The jury found in favor of the Underwood vehicle on both speed and application of brakes. Mrs. Brock, Mrs. Underwood and Mrs. Smith were the only eye witnesses to the collision. Mrs. Brock could not even remember ever seeing the Underwood vehicle before the collision or if there were other cars on the street. Mrs. Underwood did not give any testimony that would show negligence of her driver on either application of brakes or excessive speed. Therefore, we hold the answers of the jury on these two issues were not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust and that there was probative evidence to support the jury's answers. Stein v. Boehme, 302 S.W.2d 663 (Tex.Civ.App.-Eastland, 1957, n. w. h.).

In her last point appellant asserts reversible error for " * * * failing to grant a mistrial after counsel for plaintiff injected insurance into the case before the jury panel on voir dire examination * * *." We overrule the point.

In attempting to determine if any member of the jury panel had prejudices in favor of appellant's attorneys and if they knew the defendants, counsel asked the jurors if any of them, their businesses or insurance carriers, had been represented

by appellant's attorneys. Then to identify the parties he introduced Mr. Brock and told the panel he was engaged in the insurance and real estate business in Lubbock, as his father had been for several years before him. The court called counsel to the bench out of the hearing of the jury panel, and so far as the record shows there was not anything further mentioned concerning insurance. No contention is made with respect to jury misconduct.

■ These references to insurance had nothing whatever to do, so far as the record shows, with liability insurance. Even where the plaintiff had testified the defendant had told her on the night of the accident, that: "You don't need to worry. I am covered with insurance," the Supreme Court of Texas has reversed an intermediate appellant court where the record did not show miscarriage of justice. Dennis v. Hulse, 362 S.W.2d 308 (Tex.Sup.1962). The rule of presumed prejudice no longer prevails in Texas. Walker v. Texas Employers' Insurance Assoc., 155 Tex. 617, 291 S.W.2d 298 (Tex.Sup.1956). The rule for us to apply here is whether the error, if any, probably caused the rendition of an improper judgment by influencing the jury to return a verdict which it probably would not have otherwise returned, this determination to be made from the examination of the record as a whole. Walker v. Texas Employers' Insurance Assoc., supra and cases cited therein under Syl. 4.

■ Mrs. Underwood spent 19 days in the hospital as a result of the collision. She enjoyed good health before the accident and was able to do her housework and mow her lawn. Since the collision she has been unable to do her yard work and her housework has greatly suffered. She still has pain in her back and hip. She suffered severe bruises, a broken rib, a broken collarbone, and physical and mental anguish and has accumulated medical and hospital bills of approximately $1,200.00. The testimony also shows her locomotion has been decreased by the collision and that her back and hip pains have increased rather than decreased. All things considered, we do not consider the judgment for $7,-500.00 shows bias or prejudice on the part of the jury.

Accordingly, the judgment of the trial court is in all things affirmed.